Final Results Mr. Rees It pleases the court, Andrew Rees, Deputy Attorney General, on behalf of the State of New Jersey. I've ceded two minutes to the county and I would like to reserve two minutes for rebuttal. Yes, that's all granted. The Atomic Energy Act requires that any license provided by the NRC have a rule of regulation. The AEA requires both that the terms and conditions of the license be promulgated and also that the information that an applicant is required to submit to the NRC is also required to be promulgated into a rule of regulation. Are you acknowledging that New Reg 1757 is not a rule? Absolutely. New Reg 1757 is not a regulation at all. It's a guidance document. Okay. And if that's the case, what jurisdictional basis would we have? In other words, the Hobbs Act gives us jurisdiction if we're talking about a rule. How does it give us jurisdiction if you acknowledge that this is not a rule, it's a policy statement? There are two issues I'd like to raise with regards to that. First, rule of regulation is required to be issued, so the NRC should not be able to circumvent the jurisdiction of this court by circumventing the requirements of the Atomic Energy Act. Your petition about rulemaking is pending, though, right? You've got another one and it's going on. It's actually not going on. The NRC wrote a letter to us in December saying that they are going to adjourn the petition and not take any action until this court makes its decision and until the Atomic Safety and Licensing Board renders its decision. But I would direct your honors to the public citizen case. In that case, the petitioner did appeal a policy statement, but before appealing the policy statement to the D.C. Circuit of Appeals, it did file a petition for rulemaking, and it waited until the NRC denied the petition of rulemaking and then filed its petition with the D.C. Circuit. So it was beyond the 60-day requirement required by the Hobbs Act, and the D.C. Circuit held that you're too late. You should have filed your petition for review within the 60 days and not waited for your petition for rulemaking to run its course. Your first sentence said, I didn't write it down because I was listening too much, something about any request for a license. Is that what's before the NRC right now? Is it a request for a license? Isn't it just approval of some decommissioning? It's both. It's both the approval of a decommissioning plan and a request for a long-term control license, the LTC license. And has that been decided? No, it has not. We submitted a request for a hearing just to reserve our rights, but our request for our hearing mainly concerns technical issues with regards to the decommissioning plan, for example, modeling and issues with regards to the actual sites. Our appeal here today are facial challenges to the LTC license and to the guidance document 1757. So your suit, as you say, is a facial challenge. It's purely legal, and it doesn't depend in any way, does it, on how the NRC would actually apply new Reg 1757 in the Shield Alloy License Amendment proceeding? That's correct. Okay. And I think you reemphasized that in the letter you filed with the court just the day before yesterday, or maybe it went in yesterday. It was the day of the 14th, but it was under the mailbox rule. It got here on the 15th. So that takes me back, and I don't mean to be obtuse, but I've got to explore this a little further. If you acknowledge that new Reg 1757 is not a rule, it's a policy guidance statement, and it doesn't have the effect of a substantive or a legislative rule, and you recognize that you do have an opportunity to petition for rulemaking, and you've done that, even though they've said, we're not going to decide it right now, we're going to wait for your other appeal to be done. They haven't dismissed it. You have pending a rulemaking petition or a petition to get rulemaking. I'm having a hard time understanding what's the final order that you're petitioning with respect to. Where's our jurisdictional basis under the Hobbs Act? The final order here is the final decision of the NRC to make the LTC license available to the general public, and I disagree with how Your Honor characterized our position. Could you repeat what you just said? I'm sorry, Judge Rudin. I'd like him to repeat what he just said because I want to focus. What is the final decision? The final decision was the NRC's action of making the LTC license available to the general public. They didn't make a license available. What they said was these are things that we would accept or we would be inclined to accept as sufficient to meet the long-term restriction needs that our actual rules contemplate, right? They did do that. Okay. So if I say to the world, look, here's a rule, A, B, and C requirements, and they are binding. They have the force of law. And, by the way, if you're wondering how you could meet C, here's some ways that you could present to us that we'd be favorably inclined to look at. We're not saying in any given case they will or they won't. We're just telling you that, as a theoretical matter, those things make sense to us and we'd be favorably inclined. How is that saying something to the public that has the force of law and constitutes a final order that could be reviewable under the OBS Act? Because the option that the NRC provided in this case was a new license and a different license that the NRC has ever provided to the regulated community. And the First Circuit case in Citizens Awareness Network actually held that a policy statement had the effect of a substantive rule. And we do take that position in this case that the guidance document has the effect of a substantive rule. You've just got a 180 on me. I'm getting a whiplash here. You've said to me and you've said in your papers, you've said to all of us, this is not a substantive rule. In fact, you've petitioned for rulemaking and you've said this is a facial challenge to the guidance document and it's not a substantive rule. Now I've just heard you say it is a substantive rule. I don't think you can have it both ways. Explain to me which side of that. This is binary. It either is or it isn't. It's not an in-between. What is it? It is not a rule, but I do take the position it has the effect of a rule. And the reason it has the effect of a rule is, number one, it's providing a license, which it was required to do by rule or regulation. How is it providing a license? Who is licensed by this guidance statement? Who? The NRC in October of 2006, in the guidance document, provided to the regulated public a new license. So what it did was, keep in mind that the Atomic Energy Act requires all licenses, the terms and conditions and the form and the information an applicant is required to submit. It requires all those things to be placed in a rule or regulation. The NRC, in this case, provided a new and different license, but it did so in a guidance document. The First Circuit decision in Citizens Awareness Network, that involved a guidance document. It was clearly a guidance document, but the court held that the guidance document had the effect of a substantive rule. And the reason it held that is because the guidance document was providing specific examples of what a decommissioning site can do, what a facility can do in terms of decommissioning. If the case is, as it is, and I don't hear you arguing differently in your papers or here, that the Nuclear Regulatory Commission has said, we're not bound by this in any specific decommissioning plan, we may or we may not accept this guidance depending on the circumstances, how is that, is that not different than the First Circuit case that you're relying on? I mean, I understand you to be arguing on the basis of the First Circuit case, that that case had involved in it a, what was nominally a guidance statement, but it actually had the effect of law because someone was going to be bound by it. Am I understanding you right? Correct. Who's, so I'm coming back to the same point, who's bound? How does this have the binding effect of law? Whose rights are determined? Who's bound by this policy statement? Under Bennett v. Spears, they did set forth a multi-part test with regards to what is a, what is a right. And Your Honor did mention the one-part test, which is what rights or obligations have been determined. The rights that have been determined in this case are the rights for licensees to now apply for a new license. This is a new option for decommissioning. It's a new type of option that would satisfy, in certain cases, the institutional control requirement that is required to be put in place under the license termination law. Did they say in the policy guidance document this will satisfy, or did they say this is one way to meet long-term restrictions, long-term institutional control? This is one way. They did say that, but the guidance document does say that the LTC license can be used in lieu of government ownership in control of the site. And the SECI document, the SECY 03-0069, which provides NRC's rationale for the license, does state that the license is being provided to make decommissioning easier, more available, and less expensive. So it is providing, and it states that on pages A485, 491, and 487 of the appendix. And so it's creating, it's making it easier, essentially, to decommission. So those are new rights. Well, when you say it is, hasn't the NRC said, expressly said, we're not bound to follow this, and said in this related petition, your petition with respect to the decommissioning plan for Shield Alloy, that they're not necessarily bound, that you can challenge it in that context of that petition? I mean, I think that's the state of the record, isn't it? No, Your Honor. The commission has said that we can challenge the application of the LTC license to that case. But doesn't that mean they're not bound by it? That's correct. Okay. So if they're not bound by it... Well, what it means is this is a license that the Shield Alloy has to apply for, and, of course, the NRC has to make a decision if they meet the conditions that would allow them to issue the license. I would just want to point out that there are letters from the NRC which does state that the LTC license would satisfy the institutional control requirements. Now, granted, that's just from the NRC staff, but the staff has even produced a guidance document specifically for Shield Alloy providing for the LTC license. They're currently having monthly phone calls to help them get a satisfactory decommissioning plan and LTC license. Of course, all that would go beyond your facial challenge, right? That's correct. That's correct. We can give you extra time, but your red light is on. Thank you, Your Honor. Thank you. And we'll hear from the county now. No, no, we'll hear from the county. Thank you. That's all right. I didn't do it. Good morning, Your Honor. Joe McGovern from Parker McKay on behalf of Gloucester County Board of Chosen Freeholders. Can you help us with the issue to which Judge Jordan was directed? In other words, why do we have jurisdiction over this policy guideline? I do have some thoughts on that, yes, and to try to expand on what the State of New Jersey has already put in front of your honors. I frankly come down on a very basic constitutional due process question here. That's where I think we have some concerns here. We don't have jurisdiction over due process generally. We have to have a decision. But I think in the methods and in the record that we've seen, the way this matter has played out before the county and with the borough, we think that there is a serious question about whether or not due process is being done here. And that's really what my brief gets to is this issue about going into the guides document and looking at it from the standpoint of whether or not the particular requirements that this company is required to meet are in fact going to result in fairness, fundamental fairness, and meet due process guarantees. Well, Mr. McGovern, the very way you're framing that causes me some concern when you say whether due process is being done. Doesn't that acknowledge that this isn't over? I mean, how do we have any jurisdictional basis to step in in what effectively is midstream and correct what? I'm not saying anything about the merits of the arguments that the county may want to address or that the state may want to address or the legitimate and certainly heartfelt concerns and thoughtful concerns that citizens might have about this. I don't want to be misunderstood in any way regarding that. But from the purely jurisdictional perspective, if your concern is that due process is not being done, isn't that an acknowledgment that the process is ongoing and we don't have a basis to step into it? There's no doubt that the process is underway. And the concern that we have, however, is if you look at the record, you will see that, for example, I can give you some very concrete, specific examples of where I think this court can be of some help to that process and does have jurisdiction to do that. The state of New Jersey petitioned to be part of that hearing process. It was denied substantially every basis for its challenge or its right to a hearing, with the exception of some very limited areas where the NRC is willing to hear the state of New Jersey. Gloucester County was denied in its entirety and was allowed what is called participant status, which, frankly, when you look at the rule about what a participant status is allowed to do or what it provides, it's very hazy. The most I get out of it is that I'm allowed to cross-examine some witnesses during the course of these proceedings. And what I'm suggesting to your honors today is I think that this court has jurisdiction to issue an order that requires some very specific protocols be set up in the context of these NRC hearings that will address both the state's concerns and Gloucester County's concerns in terms of how those hearings are conducted and what type of information the applicant is required to provide as part of those hearings to make sure that certain questions are answered. And in particular, in my case, the one issue that I raised was what I consider a faulty cost-benefit analysis, a very substantial problem that I see with the guidance document and how these hearings are playing out in fact. So I do believe that this court has jurisdiction to issue an order that would be part or would guide or be part of those NRC proceedings that will, for lack of a better term, supplement the regulatory requirements to guarantee some due process here to both the state and the residents. Thank you, Mr. McGovern. And we have, of course, your brief in which your position is stated and full. Good morning. May it please the Court. Charles Mullins from the Office of General Counsel of the Nuclear Regulatory Commission, now largely for the Nuclear Regulatory Commission in the United States of America. I'm joined by Matthias Travieso-Diaz, who represents Sheila Loy. We're going to split the time 11 and 4. That's fine. If you have that, Ebony, you know that. Okay. When you look at this case as a matter of finality or rightness or standing or exhaustion, this case is just simply premature. When will it be right, fully exhausted, final? Let me give you a status of what the proceedings are below. No, I mean, when will it end? When will it be judicially reviewable? There will be an order at some point from the agency, from the commission, either granting or denying a request by Sheila Loy for a license amendment, which would be for possession only for long-term control. Do they have to get the NRC's license? Can they just do what they're doing anyway? No. They can't ignore you? No. I mean, New Jersey, that's important to both New Jersey and the county. That's correct. And the people. There was a notice of hearing issue. New Jersey filed a petition to intervene. The petition to intervene was granted. New Jersey filed a total of 33 contentions. In what proceeding? In the proceeding before our licensing board. The decommissioning. The decommissioning. That's correct. Whenever I speak before the licensing board, in other words there's an independent adjudicatory body called the Atomic Safety Licensing Board, which hears all requests for licensing actions. Now, is that ongoing or from time to time does that get postponed? Well, it's like any trial proceeding. Well, I don't think regulatory agencies work exactly the way trial proceedings, from my experience. They do something, and then they take a break, and we don't know how long it is, and then they do it again. So trial proceedings have to continue. There are gaps. In other words, what you will have is you will have a proceeding that will take probably one to two years, but there will be no amendment issued, and the Jersey cannot, or excuse me, and Shields-Lloyd cannot start action on what we would call the long-term control amendment until after the amendment is issued, if it is issued. But there's something in the brief, somebody's brief, that says that new Clydes may be being put in the surrounding area to the environmental and health detriment of New Jersey residents. They're here as parents, patriae really, and county residents. Is that right? I mean, in other words, while the hearing is going on, what's being done to assure the safety, the health safety of the surrounding communities? In the first place, Your Honor, New Jersey has never, never asked the NRC to take any action with regard to the site. New Jersey has never claimed to the NRC that there are new Clydes coming from the facility. There is a process by which New Jersey can write the agency under 10 CFR 2.206 and say please take enforcement action. There is pollution escaping the site. They have never done so. Okay, now I have to just tell you, I sat on the emergency motion when the Three Islands people were trying to let the groundwater go into the discharge. So I have some background on this. And all I want to know is doesn't the NRC on its own, what does the NRC on its own do to protect or to ensure that the, in the process of decommissioning, that the concerns of the state, the county, and the community are being addressed, whether they've expressed it or not? Do you have to wait for them to give you something? No. We inspect. We inspect routinely. In fact, I was at the site two weeks ago with our inspectors. Well, if I went, I wouldn't know if new Clydes are doing it. He has a better engineering background than I have, but go ahead. I have none. We do inspect. We are, at this point, we are not aware of any violations by Shield Alloy. We're not aware of any radiation or any material escaping off site, certainly not in excess of any guidelines. In other words, they're not in violation of any regulation, and New Jersey has not claimed that they are. Now, proceeding below. Let me interrupt, if I may, Mr. Molenski. You've asserted in your briefing, of course, that this isn't the rule. That's correct. You've been pretty emphatic about that. But you make your argument, it seems you make your primary argument, that on the basis of finality, and you make some standing and rightness arguments, too. I'm just curious. Isn't the fact that this isn't the rule, why would we get to finality? Why would we get to rightness? If it's not a rule, don't we just lack jurisdiction at the get-go? That is one of the things that we argue. I mean, we argue that this is not a final agency action. In other words, the commission has said, if you will look at page 836, the commission said in the order of January 12th last year, when New Jersey asked for a hearing on the new reg, the commission said there's a licensing proceeding. If a licensee is involved in a proceeding which exceeds to obtain a license or license amendment but demonstrates compliance with the guidance, that guidance can be challenged in the hearing. It was specifically said in this hearing. So am I correct or incorrect in understanding your basic argument? I mean, you put different labels on it, finality, rightness, standing. Exhaustion. Exhaustion. But when you come down to it, isn't in every instance the bottom line here that you're saying this is a non-binding statement that doesn't determine any rights? And if that's the truth, then do those labels make any difference? Or is that all a way of saying, hey, there's nothing for you to review here. There's no jurisdiction under the Hobbs Act. That is our argument. In other words, in this case, the commission has not taken any final action. New Jersey is not bound by the new reg. Shiogoi is not bound by the new reg. In the hearing, and I would take issue with Mr. McGovern's characterization of what has happened below, which is why I wanted to get to that point. What the licensing board did was the licensing board looked at standing for all the parties and said all the people who had applied had standing. Then it looked at the contentions of everybody except New Jersey and threw those contentions out. At which point, Mr. McGovern could have appealed to the commission. They chose not to do so. But they could have appealed to the commission and then came directly to this court. In fact, we are going to be in New Jersey, and myself will be back this fall on a similar case out of the Oyster Creek plant where New Jersey was thrown out. New Jersey immediately appealed to the commission. The commission upheld that, and it will be here this fall. But the hearing is still ongoing. We're looking forward to it. What's the answer to the point that Mr. Reese was making on behalf of the state that in the public citizen case they waited until the rulemaking was done and then they made their application and they were told you're too late? What's your response to that? You had a rule. It was a response to the action. Citizen awareness, I think it is. The First Circuit case. Let me address both of them. In the public citizen case, the commission was responding to the Nuclear Waste Policy Act, at which point the Nuclear Waste Policy Act directed the commission to issue certain guidelines. The commission issued a policy statement which said, this is in response to section so-and-so of the Nuclear Waste Policy Act. That was a final agency action. The citizen's awareness case I have some familiarity with because I argued that case, something my management reminded me of for the next five years of performance appraisals. In that case, the commission did a policy change and then on debate used that policy change as the basis of denying a request for hearing. Citizens Awareness Network came in and said, we want a hearing on what you're letting people do at Yankee Atomic, up at Western Massachusetts. The commission said, no, you cannot get a hearing, see our new policy statement. On the basis of that, then you had a final agency action, which was using that policy statement. Using that policy statement to deny a hearing. That's correct. And the First Circuit disagreed with us. In this case, And it gets on your performance reviews. Performance review. In this case, go back to the licensing board. The licensing board found that New Jersey had standing. It found that one of New Jersey's contentions was good. It said it was going to defer ruling on the rest of New Jersey's contentions until Sheila Loy came in with a revised decommissioning plan. Sheila Loy had submitted a decommissioning plan. The NRC staff had said, that's not good enough. We have some problems with that. Sheila Loy said, we're going to put in a revised decommissioning plan. We're going to wait on the contentions until we get the revised decommissioning plan because New Jersey may want to submit more contentions on the new plan, which they can do under the late-file contention rule. And in fact, one of the contentions, if you recall, if you look at the record, there's a motion to dismiss earlier and a response and a reply. Attached to the reply is contention 17, New Jersey, which is a facial challenge to the new written. The licensing board can rule on that contention. It can either accept it or reject it. When they do that, will that be a final decision that we can hear? Once it goes to the appeal, it can be appealed to the commission. Once it's appealed to the commission, yes, it would be a final decision. Okay, so you're saying that the facial, and this is a facial challenge to the new reg? That's correct. And how long, there are citizens sitting here, and what they want to know is how long will it take for the matter to come to some resolution? The administrative process is not short. You're asking me to look at the situation and read tea leaves, and I'm speculating. It's years. We're talking about years. I'm saying probably a year to one to two years. And how long has it been going on? Probably about nine months, six months. That is not unusual for an administrative proceeding. And it has taken decades for somebody to decide that you can transport the nuclear waste or the nuclides or the rods, whatever it turns out to be, to Yucca Mountain, which will take decades more if they ever get there. Ma'am, that's beyond my control, I'm afraid. I know, but that's what people are really concerned about. I understand that, Your Honor. And I know that we, and it's just frustrating, and I don't know that we can do anything because we may not have jurisdiction. I understand that. And it is our argument today that you do lack jurisdiction, that there isn't a final action here. Well, I've noted that there seems to be a practical approach to some of the things that are in the record, where the NRC will say, look, we're not going to, and you've just alluded to it, we're not going to act on these aspects of your request, New Jersey, because those things might change. I think what you're hearing Judge Slover say, and I would echo it, is I hope that same sort of practicality would make its way into the way you address the county's and the state's concern about the length of time it takes. Whether that's something we can opine on in a legal way or not, there is obviously public concern there, and if you're going to be practical in one aspect, I think everybody would hope you'd be practical across the board and recognize that one practical concern is putting off a decision for a very lengthy time starts to feel like a final decision. I understand that, and I will certainly relay that message. Let me respond to one other thing. I see my time has expired. Very briefly, one thing that Mr. McGovern said. Mr. McGovern talked about the process of, in other words, the county was denied participation as a party, but was offered participation under another provision of the NRC. As a governmental entity or something? That's correct. We read the briefs, as I understand it. But the NRC has a very long history of allowing states, local governments, and Indian tribes to participate. It's more than just a couple of cross-examination questions. It's a very full and fair participation, and I would invite him to participate. Thank you very much. Thank you, Your Honor. Good morning. May I please decode? My name is Matias Traviezo Diaz. I'm a partner at the Federal Reserve Shopping, and I represent Chitaloi. I'm ostensibly here to talk about the merits of the New Jersey claims, but I believe that they shouldn't be reached because of the core naturalization. And I'm going to touch, before I talk about the merits, about two of the items that have been raised in previous arguments. First, let me clarify for you how it actually works before the NRC, when you have a licensing request like the one that Chitaloi has put forward. There are three steps. Mayor, let me cut to this. Why are you decommissioning? Is the company still in existence? No, the company ceased doing business around 2001. So they are on a caretaker mode over the waste material that was generated when they were in process. They have a license that allows them to keep and maintain the property, and the leases that we are talking about are very low, and they're all within the limits allowed by the NRC. But as I read the record or the briefs, some of them have a half-life. Is it 2,000 years or 20,000 years? No, billions of years. Billions of years. When you're talking about small amounts, small amount of radiation over a long time, excuse me. Would the process be any different if it were large amounts? The process itself. You're talking about what the process is. The process would be the same. Here, since they are no longer generating these materials, they are required by law to decommission the facility. The decommissioning can take a number of ways. The NRC rules under the license termination rule that you have heard about allows a site to remain with the materials in place provided certain conditions are met. What do you do with the materials in place? Do they get buried? They get covered by a big layer of rock that prevents reactivity from escaping, and on top of it you put a layer like a, I want to say, like a toppling that prevents the water from getting in. I'm asking you practical questions rather than legal ones. And is that the process that the NRC examines from time to time to see if there's any escape? Yes. The NRC is now looking. The material is on site on COBRA, and the NRC inspects it periodically to make sure that no excess radiation How periodically is periodically? I think they're doing inspections every six months. But in any event, the point is that, let me cut to the end of the process. If the NRCs, if the sheet of law requests for this decommissioning plan that would cover the waste and prevent radiation from escaping, if it is denied, the waste will stay there. So, in fact, what sheet of law is trying to do is comply with regulations and take beneficial action. If I could, does that answer your question? Well, you've answered it. Whether I'm satisfied with the answer is another question. Let me just make clear as to what's happening here. It is not practical to take the waste out of the facility because in the process of moving it out, some of this waste is as big as a car. In order to move it out, you have to pulverize it. And that will create more radiation escaping than covering it and leaving it in place. Sheet of law wants to do it not just because it's cheaper, but because it has less of an environmental impact. On the people of New Jersey, to let it sit where it is protected and covered and let the radiation decay. If this application is denied, what's going to happen is until some other way of dealing with it is arrived at, it is going to stay in place. Doing what it's doing now, which is essentially nothing. I see that my time is out. I would like to, if I could, address one point which I think is very important, which is how does the process go before the NRC? There are three steps. Step one, the staff has to review the plan that Sheet of Law has come up with. And by the way, they have daily or weekly or monthly consultations. And the state of New Jersey is a participant. They are in on the conversations between Sheet of Law and the NRC as to what is going to be done with this waste and why is your plan good or no good. The staff has given guidance as far as we are concerned. We'll let you do it if you do what we recommend in the guidance 1757. That is by no means the end of the story. The licensing board has to approve the contested proceeding. Well, hold on, let me ask you a question here. You know, the NRC has taken the legal position before us that they have not made any final decision about what they will and they won't allow. Am I hearing you say something different? No, on the contrary. What happens is, as I said, there are three steps. Step one is the staff. Well, they're in your brief, aren't they? Pardon me? You discussed this in the brief. One is the staff, one is the licensing board that will have the litigation. These same issues are before the board. And finally, it has to be ruled by the commission itself. That is the final action. So the commission could reject what the staff guidance has said. It could reject this application to Sheet of Law. It could reject what the licensing board rules. So we have a long process to go. And I will estimate it's a couple of years before you have an action that is actually reviewable by you. And I am to commend you not to spend time looking at this now because it's way premature. Thank you. Sorry to take a couple of minutes. Thank you. We'll hear from New Jersey in rebuttal. Emily, is it true? Your Honor, this court should not wait until the NRC takes the one or two years it needs to make its final decision. Do we have the authority to do anything else? No matter whatever the frustration that may have been expressed, we have to deal with our jurisdiction. Judge Jordan has been asking, why would we have jurisdiction if we have no final agency action? One thing not discussed yet are the procedural violations and harms here to the state, specifically the failure to conduct a programmatic environmental impact statement. Under the Lujan case, footnote 7 clearly says that the failure to conduct a required EIS gives jurisdiction. But they say they will be conducting one. As I read their briefs, they say that will be done. And they recognize that they have to do that before they sign off on the decommissioning. And you can see that in your brief. The NRC is very clear that they will only do an EIS for the Newfield site. But what we are arguing is that an EIS is required to look at the nationwide impacts of providing a new institutional control, a new license. But we don't know what kind of an EIS they'll do until they do it. And then you might be able to say, or you are certainly standing to say, you should do a nationwide, you shouldn't do a regionwide. I mean, you will be heard on that, won't you? Isn't there a regulation that specifically addresses what you're talking about? Yes, Your Honor. And it says that there are, if I'm quoting it right here, issuance or amendment of guides for the implementation of regulations and issuance or amendment of other informational and procedural documents do not impose any legal requirements, and close quote, including not requiring an EIS. Okay, so if that is a rule, how can you come in and say they're in violation of what the regulations say they don't have to do? Well, first of all, the regulation says that the commission may still require an EIS if it decides it's necessary. And second of all, the act, the National Environmental Policy Act, and the case law that construes it clearly states that, and for example, the CLEPI case v. Sierra Club, it stated in dicta that when the Department of the Interior allowed coal mining on federal land, it did state on page 400 that the department was correct and required to conduct an EIS as national in scope. I just want to state that. But they say they're going to do it, whether they have to or not. Correct. But they say we're going to do it. Are we supposed to say to the NRC, we don't believe you? No. The NRC has stated they will do an EIS, but only for the Newfield site. They have clearly stated in their brief that they will not do a programmatic EIS that is national in scope. They have taken that position. So under the Lujan case, the court needs to come in and tell them that before you provide an LTC license and make it available to the public, you first have to do a programmatic EIS. And the case law is very clear in NRDC versus NRC and Sierra Club versus U.S. Forest Service that a programmatic EIS is required to be conducted before the federal action so that the EIS has input into the agency decision. And in this case, doing the site-specific EIS, of course, in our view, is not enough. It has to look at the nationwide impacts. There are going to be cumulative effects here. Isn't that something you should address to Congress? I think Congress has already addressed this in NEPA. Congress requires a nationwide EIS? Well, the case law construing it under CLEPI v. Sierra Club, NRDC versus NRC, any federal action that has cumulative effects under NEPA requires a programmatic EIS. And that has not been done, and NRC has taken the position that they are not going to do a programmatic EIS. I see my time is up. Are there any other questions? That's all. Thank you. I think we understand New Jersey's position. Thank you. Thank you.